**FILED**
March 25, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ Joseph Hinojos
DEPUTY

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
Western  District of  Texas
Pecos Division

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )   Case No.  **PE: 26-MJ-104** |
| | ) |
| | ) |
| | ) |
| Lizbeth CABRERA | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  March 22, 2026  in the county of  Presidio  in the
Western  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324(a)(1)(A)(ii)&(b)(i) | Transportation of illegal aliens for commercial advantage or private financial gain. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Ryan Z. Muniz*
*Complainant's signature*

Ryan Z. Muniz Border Patrol Agent
*Printed name and title*

Complaint sworn to in my presence and signed
electronically on this date.
FED.R.CRIM.P. 4.1(b)(2)(A)

*Judge's signature*

Date:  03/25/2026

City and state:  Alpine, Texas

Honorable Judge David B. Fannin
*Printed name and title*

<u>AFFIDAVIT</u>

United States of America v.

**Defendants:**

1. Lizbeth CABRERA

1. On March 22, 2026, Border Patrol Agents (BPAs) assigned to the Presidio Station were advised by a Texas Department of Public Safety (DPS) Trooper that they had encountered a black sedan, later identified by DPS as belonging to Lizbeth CABRERA. DPS reported that when they pulled her over, she gave conflicting statements regarding her reason for being in the area. DPS further advised the Presidio Station that CABRERA was heading to Presidio, Texas, and believed she was in the area to conduct illicit activities.

2. At approximately 6:15 P.M., BPAs observed the same vehicle driven by CABRERA traveling eastbound on FM-170, away from Presidio, Texas. At approximately 6:20 P.M., a BPA on roving patrol on FM-170, observed CABRERA driving eastbound past him. The BPA noted that the vehicle had one female occupant, who waved to him in a friendly manner. At approximately 6:30 P.M., a BPA in Lajitas, Texas, observed the same vehicle being driven by CABRERA, where she was the sole occupant, driving westbound on FM-170. This is activity commonly seen by smugglers who are trying to locate the people they are picking up, so that they can begin travelling to their destination.

3. At approximately 7:30 P.M., a BPA parked on FM-170 observed the same vehicle from earlier heading westbound, now occupied by a front seat passenger. The vehicle was traveling at a high rate of speed and CABRERA did not look at or wave to the BPA as she had previously. The BPA observed that neither CABRERA nor the passenger made eye contact, and the vehicle abruptly slowed after passing his location.

4. The BPA followed the vehicle for a short distance and requested a records check via his service radio. While waiting for the results, the BPA observed CABRERA slowing down, swerving between lanes, failing to maintain her lane, and crossing both the center and fog lines. The records check revealed the vehicle was registered to a rental company. Smugglers commonly utilize rental vehicles to conduct their illegal activity.

5. Due to the presence of the additional occupant, the behavior of the occupants, the abnormal driving behavior, the proximity to the U.S./Mexico Border, the earlier report

from DPS, and the additional behavior observed by the Agent, the BPA initiated a vehicle stop at approximately 9:21 P.M. near McCalls Ranch on FM-170.

6. The BPA identified himself as a United States Border Patrol Agent and stated he was conducting an immigration inspection. He asked CABRERA where she was coming from, to which she responded, "Dallas." When asked where she was heading, CABRERA appeared confused, conferred with the passenger, and eventually responded, "Presidio." The BPA then asked how she knew the passenger, and she replied, "my uncle." She reiterated this answer but soon laughed and referred to the passenger as "her aunt." The BPA then instructed CABRERA to exit the vehicle for further questioning.

7. During questioning, the BPA asked CABRERA to provide the name of her aunt, but she was unable to do so. Shortly after, CABRERA changed her story and said she had picked up the passenger "by the corner." At this point, CABRERA was detained pending the immigration inspection of the passenger.

8. While CABRERA was being questioned, another BPA conducted an immigration inspection of the passenger. After detaining CABRERA, the BPA stated the passenger admitted to being illegally present in the United States. CABRERA was then placed under arrest for alien smuggling, and both she and the passenger were transported to the Presidio Station for further processing.

9. After being advised of her Miranda Rights and waiving them, CABRERA admitted to knowing the passenger was illegally present in the United States. She stated she had spoken with a facilitator to earn extra money, was told the passenger would have imposter documents, and was instructed to take her to Odessa, Texas.

_____
Ryan Z. Muniz
Border Patrol Agent

_____
Honorable Judge David B. Fannin
U.S. Magistrate Judge